# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **LA VAUNCE BONNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:14CV1951NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of La Vaunce Bonner (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 <u>et seq</u>., and for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 <u>et seq</u>. Plaintiff has filed a brief in support of the Complaint. (Doc. 13). Defendant has filed a brief in support of the Answer. (Doc. 16). Plaintiff has filed a Reply. (Doc. 17). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 8).

# I.
# PROCEDURAL HISTORY

On March 27, 2012, Plaintiff filed her applications for DIB and SSI. (Tr. 12, 149-61). Plaintiff alleged a disability onset date of June 30, 2010.[1] Plaintiff's applications were denied, and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 12, 52-53). After a hearing, by decision, dated August 28, 2013, the ALJ found Plaintiff not disabled. (Tr. 12-23). On October 9, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). As such, the ALJ's decision stands as the final decision of the Commissioner.

# II.
# LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social

---

[1] Plaintiff amended her alleged onset date to February 25, 2012, the date that a previous ALJ issued an opinion finding Plaintiff not disabled. (Tr. 14, 33, 175).

Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228

F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence").  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See

id.  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  <u>See</u> <u>Rautio v. Bowen</u>, 862 F.2d 176, 179 (8th Cir. 1988); <u>Millbrook v. Heckler</u>, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  <u>See</u> <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Nevland</u>, 204 F.3d at 857 (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence.  <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities.  <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used.  An ALJ posing a hypothetical to a VE is not required to

include all of a plaintiff's limitations, but only those which the ALJ finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff testified, at the administrative hearing, that she was unable to work due to depression, anxiety, back pain, and left leg weakness. Plaintiff further testified that she experienced depression and anxiety on a daily basis; that her anxiety became worse when she was in a crowd of people; that she was unable to stand for more than about ten to fifteen minutes, could walk for about five to ten minutes, and could not lift more than five pounds; that she spent most of her time

in a recliner with a pillow; and that she experienced numbness in her right arm which prevented her from using a keyboard or writing with a pen. (Tr. 37-40).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2015; that she had not engaged in substantial gainful activity since February 25, 2012, her amended alleged onset date; that she had the severe impairment of affective disorder; and that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ further found that Plaintiff had the RFC for the full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff was limited to unskilled work in which she could perform routine, repetitive tasks in a low-stress environment requiring only occasional decision-making; Plaintiff was limited to occasional changes in the work setting and occasional exercise of judgment; and Plaintiff was limited to occasional contact with supervisors, coworkers, and the general public. Based on the testimony of a VE and the Dictionary of Occupational Titles (DOT), ALJ also found that Plaintiff was capable of performing her past relevant work as a packager. As such, the ALJ found Plaintiff not disabled.

Plaintiff contends that the ALJ's decision is not based on substantial evidence because, when formulating her RFC, the ALJ improperly relied on the opinion of Sherry Bassi, M.D., a non-examining doctor who completed a Mental

RFC Assessment and a Psychiatric Review Technique form, and because the ALJ failed to properly consider Plaintiff's testimony regarding the severity of her limitations due to her psychological conditions.[2] For the following reasons, the court finds Plaintiff's arguments without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

## A.    Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not

---

[2]    Before this court, Plaintiff does not challenge the ALJ's findings regarding her physical impairments.

necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court

finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered Plaintiff's daily activities. (Tr. 20-21). The record reflects that, commencing September 2011, Plaintiff received in-home help with her personal care, housekeeping, and transportation from Easy Care Consumer Directed Services. (Tr. 338-437). In a Function Report – Adult, Plaintiff stated that she prepared simple food; that some days she tried "to make up [her] bed" and wash dishes; that she shopped in stores once or twice a month for about thirty to forty minutes; that she could pay bills, count change, and use a checkbook; that she spent time with others, "sometimes on the phone"; and that she attended church once a week. Plaintiff also reported that her allegedly disabling conditions did not affect her ability to squat, stand, reach, kneel, talk, hear, see, understand, or follow instructions; that she could walk one block; that she could follow written instructions if they were short; and that she got along "w/authority." (Tr. 204-208).

Also, Gerald Brewah, M.S.W., and Javez Qasim, M.D., reported that Plaintiff said that she was "able to perform her personal hygiene independently"; that she did her own shopping; and that she did "virtually nothing for leisure except for going to church and watching TV." (Tr. 502). In December 2012,

Plaintiff told Stella Mosely, L.S.W., that her daughter helped her with errands and around the house when she was not feeling well. (Tr. 491).

While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, a claimant's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See Wright v. Colvin, 789 F.3d 847, 854 (8th Cir. 2015) ("Wright himself admits to engaging in daily activities that this court has previously found inconsistent with disabling pain, such as driving, shopping, bathing, and cooking."); McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (ALJ properly discounted plaintiff's credibility where, among other factors, plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, tak[ing] care of his dogs, us[ing] a computer, driv[ing] with a neck brace, and shop[ping] for groceries with the use of an electric cart"); Buckner v. Astrue, 646 F.3d 549, 555 (8th Cir. 2011) (finding plaintiff's depression was not severe where plaintiff engaged in a daily activities that were inconsistent with his allegations). See also Ponders v. Colvin, 770 F.3d 1190 (8th Cir. 2014) (holding that substantial evidence supported the ALJ's denial of disability benefits in part because claimant "performs light housework, washes dishes, cooks for her family, does laundry, can handle money and pays bills, shops for groceries and clothing, watches television,

drives a vehicle, leaves her house alone, regularly attends church, and visits her family"); Roberson v. Astrue, 481 F.3d, 1020, 1025 (8th Cir. 2007) (holding that the ALJ's denial of benefits was supported based in part because Plaintiff fixed meals, did housework, shopped for grocers, and visited friends).  Moreover, to the extent Plaintiff urges the court to reweigh the evidence regarding her daily activities and draw its own conclusion in this regard, it is not the function of the court to do so.  See Bates v. Chater, 54 F.3d 529, 531-32 (8th Cir. 1995) ("As we have stated many times, we do not reweigh the evidence presented to the ALJ, and it is the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses.") (internal citations, punctuation, and quotations omitted).  In any case, Plaintiff's daily activities were only one of many factors considered by the ALJ when determining Plaintiff's credibility.

Second, the ALJ considered that the evidence of record did not corroborate the severity of the symptoms of Plaintiff's mental impairment.  (Tr. 14-15, 17-22).  The objective medical evidence, or lack thereof, is an important factor to consider in determining credibility.  See 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of a claimant's symptoms and the effect those symptoms may have on a claimant's ability to work).

The objective medical evidence establishes that, on January 24, 2012, Plaintiff presented for care with Dr. Qasim. Pursuant to a mental status examination, Dr. Qasim reported that Plaintiff made good eye contact; that her affect was appropriate; that her mood was dysphoric; that her impulse control and self-concept were adequate; that her thought process was intact; that her concentration was fair; that her memory, judgment, insight, and sleep pattern were good; and that she was oriented. Dr. Qasim diagnosed Plaintiff with major depressive disorder. (Tr. 257-58).

On March 13, 2012, Plaintiff returned to Dr. Qasim, and, pursuant to a mental status examination, Dr. Qasim reported that Plaintiff was cooperative; that her psychomotor activity was calm; that her affect was constricted; that she had suicidal thoughts; that her mood was depressed and dysphoric; that her impulse control and self-concept were adequate; that her thought process was intact; that she had auditory hallucinations; that her concentration was poor; that she was oriented; that her memory, judgment and insight were good; and that she had a loss of appetite and sleeplessness. Dr. Qasim diagnosed Plaintiff with major depressive disorder and a Global Assessment of Functioning (GAF) of 48.[3] (Tr. 255-56).

---

[3] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent

Also, on this date, Plaintiff met with Stella Mosley, C.S.W. Ms. Mosley reported that Plaintiff was neatly dressed but appeared troubled. (Tr. 538). On March 29, 2012, Plaintiff reported that she had a depressed mood, diminished interest or pleasure, fatigue, feelings of guilt, poor concentration, restlessness or sluggishness, and sleep disturbance. Plaintiff's negatives included compulsive thoughts or behaviors, hallucinations, manic episodes, panic attacks or thoughts of death or suicide. (Tr. 305).

On April 4, 2012, presented to Ericson Smith, Ph.D., who reported that Plaintiff was well groomed and cooperative; that her judgment and insight were good; that her speech was coherent; that her thought content was logical; that Plaintiff did not have hallucinations and was not suicidal; that she was oriented; and that her memory was normal. Dr. Smith further reported that Plaintiff said she

"some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32. See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] . . . reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships.'") (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (alterations in original). See also Goff, 421 F.3d at 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 58-60 supported ALJ's limitation to simple, routine, repetitive work).

had been depressed and stayed in bed all the time, and that this behavior had "been in place since she was turned down for her disability." Dr. Smith told Plaintiff that the documents "sent out by [the Hopewell Center] were not supportive of her getting disability." (Tr. 529). When Plaintiff returned to Dr. Qasim, on April 17, 2012, she stated that her mood was better. Pursuant to a mental status examination, Dr. Qasim reported that Plaintiff's mood was anxious and dysphoric; that her impulse control and self-concept were adequate; that her concentration was fair; that her affect was appropriate; that she was not suicidal; that she was oriented; that her memory, judgment, and insight were good; that her appetite was "up & down"; and that her GAF was 52. (Tr. 526-27). See n.3 (GAF of 51-60 is in the moderate range).

On April 25, 2012, Dr. Bassi reviewed Plaintiff's records and completed a Mental RFC Assessment in which she reported that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms, interact appropriately with the general public, and accept instructions and respond appropriately to criticism from supervisors. In all other areas, Dr. Bassi found that Plaintiff was not significantly limited. Dr. Bassi concluded that Plaintiff could follow simple directions and make basic work-

related decisions, and that she could adapt to routine change in a work environment. (Tr. 308-10).

When Plaintiff saw Thelma Coleman, M.S.W., C.S.W., on May 9 and 15, 2012, she was oriented, and on May 9, 2012, Plaintiff was "free of negative symptoms." (Tr. 523-24). On May 15, 2012, Dr. Qasim reported that Plaintiff's affect was constricted; that her mood was appropriate; that she was depressed; that her concentration was poor; that she was cooperative, made good eye contact, and had coherent speech; that her thought process was intact; that her memory, judgment, and insight were good; that she was oriented; and that her GAF was 52. (Tr. 521). On June 1, 2012, Ms. Coleman reported that Plaintiff was "free of negative mental health symptoms." (Tr. 520). On August 28, 2012, Plaintiff told Dr. Qasim that she was "not doing good," was "feeling very distraught," was "tired of life," and had been "rejected by disability." Pursuant to a mental status examination, Dr. Qasim reported that Plaintiff's speech was coherent; that her impulse control and self-concept were adequate; that her thought process was intact; that her memory was good; that she was oriented; that her judgment was good; that her thought process was fair; and that her GAF was 49. (Tr. 514-15).

Plaintiff saw Michael McCann, M.D., on October 26, 2012, for physical problems. In his Assessment, Dr. McCann stated that Plaintiff's "depression increased with pain and increased weight." (Tr. 328-29). On November 1, 2012,

Ms. Mosely reported that Plaintiff's mood was stable. (Tr. 508). On November 20, 2012, Dr. Qasim reported that Plaintiff's GAF was 50. (Tr. 506).

On December 30, 2012, Dr. Qasim conducted an "Adult CPRC Psychosocial Assessment" of Plaintiff, and reported that, during the interview, her affect, speech, and motor activities were appropriate, her thought content was coherent, she was oriented, and she made good eye contact. Dr. Qasim also reported that Plaintiff said her memory was bad; that Dr. Qasim assessed this by asking Plaintiff to recall words; and that she recalled the words "quickly after about 10 minutes." Plaintiff told Dr. Qasim, in the course of the Assessment, that her depression had improved a lot due to the medications she was taking. On this date, Dr. Qasim diagnosed Plaintiff with a current GAF of 45. (Tr. 499-504).

On February 12, 2013, pursuant to a mental status examination, Dr. Qasim reported that Plaintiff's memory, judgment, and insight were good; that her mood was anxious and depressed; that her eye contract was fair; that her speech was coherent; that her concentration was poor; that her affect was constricted; and that her GAF was 50. (Tr. 486-87).

On May 1, 2013, Syed Raza, M.D., a psychiatrist, completed a Medical Source Statement – Mental in which he opined that Plaintiff was markedly limited in 9 of the 20 areas of functioning, extremely limited in 1 area, and moderately

limited in 9 areas of functioning.[4] In particular, Dr. Raza opined that Plaintiff was markedly limited in the ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, sustain ordinary routine without special supervision, work in coordination with others, make simple work-related decisions, complete a normal workday and week without interruption from psychologically-based symptoms, get along with coworkers, respond appropriate to change in the work setting, and travel to unfamiliar places. Dr. Raza further opined that Plaintiff was extremely limited in the ability to set realistic goals and make plans independently of others. (Tr. 594-95).

When Plaintiff presented with the flu and for back pain, on May 6, 2013, Xingrong Lu, M.D., reported that Plaintiff was alert and oriented; that her speech was clear and fluent; and that her comprehension was intact. (Tr. 615-16). On May 7, 2013,[5] Plaintiff told a counselor that she was "[g]oing through stuff," not sleeping, overwhelmed, and would "be better off dead." Pursuant to a mental status examination, the counselor reported that Plaintiff's impulse control was inadequate; that her self-concept was poor; that her thought process was intact; that she had auditory and visual hallucinations; that she was oriented; that her memory

---

[4] Dr. Raza did not assess Plaintiff's ability to carry out detailed instructions; thus he only checked 19 out of 20 boxes on the Medical Source Statement – Mental.

[5] Plaintiff states that the date of this counseling session was May 1, 2013, but to the court the handwritten note reflects it was May 7, 2013. (Tr. 587).

was good; and that her judgment and insight were fair.  Plaintiff was diagnosed with post-traumatic stress disorder (PTSD) and a GAF of 45.  (Tr. 587-88).  On May 15, 2013, Ms. Mosley reported that Plaintiff's mood was stable and alert.  (Tr. 641).

On June 7, 2013, Plaintiff reported that she was depressed and that she isolated herself.  Pursuant to a mental status examination, a counselor reported that Plaintiff's memory and insight were good; that her motor activity was hypoactive; that she was oriented; that her impulse control, concentration, self-concept, and eye contact were poor; that her speech was coherent; and that she had PTSD and a GAF of 45.  (Tr. 629-30).

Third, it was reported that Plaintiff's conditions were controlled with medication.  See Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (internal citation omitted).  Notably, Plaintiff testified, at the administrative hearing, that her medication calmed her down.  (Tr. 37).  Also, in a Function Report – Adult, Plaintiff stated that she controlled stress with medication, when she did not forget to take it.  (Tr. 208).  On March 17, 2012, it was reported that Plaintiff's depression was controlled with Welbutrin and Abilify.  (Tr. 266).  On March 29, 2012, when she presented for depression, it was reported that Plaintiff was "stable on meds."  (Tr. 305).  On April 26, 2012, Plaintiff reported, in

regard to her depression, that she had "better days when she [got] up in the morning" and took her medication. (Tr. 334). On June 15, 2012, Ms. Mosley reported that Plaintiff's mood was good and that she continued to take her daily medications. (Tr. 507). Dr. Qasim reported, on November 28, 2012, that Plaintiff said she previously had suicidal thoughts but that she was currently taking medication which helped her "tremendously." Plaintiff also stated that her depression had improved "a lot due to the medication she [was] taking." (Tr. 499, 502). Further, Dr. Qasim reported, in January 2012, that Plaintiff suffered no side effects from her medications (Tr. 258), and in May 2012, Ms. Coleman reported that Plaintiff had no negative symptoms from her medications (Tr. 523-24). See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention [the claimant's] having side effects from any medication."); Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994).

Fourth, Dr. Qasim reported, in November 2012, that Plaintiff stated her mental health problems started, in 2005, when she was going through a divorce; that her problems exacerbated in 2006 when she lost her mother and in 2010 when her oldest son was killed; that her "depression emanated from [a] series of disasters she had gone through during the past few years"; and that she was "coping now, but she [had] a long way to go." (Tr. 501-502). In May 2013, Plaintiff reported

that she was "going thr[ough] stuff," was not sleeping, and was overwhelmed. (Tr. 587). See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations); Shipley v. Astrue, 2010 WL 1687077, at *12 (E.D. Mo. April 26, 2010) (situational depression is not disabling).

## B.    Plaintiff's RFC:

As set forth above, the ALJ found that Plaintiff had the RFC for the full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff was limited to unskilled work in which she can perform routine, repetitive tasks in a low-stress environment requiring only occasional decision-making; Plaintiff was limited to occasional changes in the work setting and occasional exercise of judgment; and Plaintiff was limited to occasional contact with supervisors, coworkers, and the general public.

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC

based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified, in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and

because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591.

Upon determining Plaintiff's RFC, the ALJ first identified and considered Plaintiff's functional limitations on a function-by-function basis.  In particular, the ALJ found that the record supported the presence of moderate depressive symptoms, but that it did not contain evidence of functional limitations that would preclude "unskilled work, performing routine, repetitive tasks in a low-stress environment requiring occasional decision-making, occasional changes in the work setting, and occasional exercise of judgment."  (Tr. 19).

Upon reaching this conclusion, the ALJ noted that the records of mental health professionals reflected "moderate waxing and waning of [Plaintiff's] depressive symptoms."  (Tr. 19).  In this regard, as considered by the ALJ, on March 13, 2012, Plaintiff reported having auditory hallucinations, and two weeks later she reported having fearful thoughts, fatigue, guilt, poor concentration, appetite loss, and sleep disturbance, but she specifically denied hallucinations.  (Tr. 19, 255-56, 305).  Then on May 9, 2012, Plaintiff was "free of negative symptoms," (Tr. 524), and, on August 28, 2012, Plaintiff was "not doing good." (Tr. 514).  On May 7, 2013, Plaintiff said she would be better off dead (Tr. 587), and one week later, on May 15, 2013, Plaintiff's mood was stable (Tr. 641).

The ALJ concluded that Plaintiff's depression resulted in functional limitations and incorporated these limitations in the RFC which the ALJ assigned to Plaintiff. (Tr. 20). Further, upon formulating Plaintiff's RFC, the ALJ included only those limitations which he found credible. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record.").

Also, upon formulating Plaintiff's RFC, the ALJ considered Dr. Bassi's evaluation of the record. (Tr. 21). Although Plaintiff does not challenge Dr. Bassi's findings, as set forth above, Plaintiff argues that the ALJ erred by giving any weight to Dr. Bassi's opinion because she was a non-examining source. (Doc. 13 at 10-11). The Regulations and case law, however, provide that an ALJ can consider opinions from medical experts on the nature and severity of a claimant's impairments. See 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii); Turpin v. Colvin, 750 F.3d 989, 994 (8th Cir. 2014) (although testimony from a medical expert is not substantial evidence on its own, it may be afforded weight and considered with other evidence including a claimant's testimony and other medical records); Hacker v. Barnhart, 459 F.3d 934, 939 (8th Cir. 2006) ("The regulations specifically provide that the opinions of non-treating physicians may be considered.").

Although generally more weight should be given to the opinion of a treating physician than a non-examining physician, when the opinion of the non-examining physician is consistent with the medical and non-medical evidence in the record, it is proper to afford the opinion of the non-examining physician considerable weight. See 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2); SSR 96-2p ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). Significantly, Dr. Bassi's opinion was consistent with Plaintiff's mental status examinations, which indicated that Plaintiff was often alert, oriented, calm, and cooperative; that she often made good eye contact; and that she often had coherent speech, adequate impulse control, adequate self-concept, intact thought process, and good judgment, memory, and insight.

In any case, the ALJ only gave Dr. Bassi's opinion "some weight," as the ALJ formulated Plaintiff's RFC after evaluating the record as a whole. Cf. Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) ("Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole.").

To the extent Plaintiff argues that Dr. Bassi's opinion cannot constitute substantial evidence to support the ALJ's RFC determination because it was

completed before some of Plaintiff's treatment notes were made part of the record (Doc. 13 at 10-11), Dr. Bassi assessed Plaintiff's mental impairments at the time she completed the evaluation. Moreover, as stated above, the ALJ only gave some weight to Dr. Bassi's opinion in the course of his considering the record in its entirety.

Also, upon formulating Plaintiff's RFC, the ALJ gave little weight to the above described opinion of Dr. Raza as expressed in the May 2013 Medical Source Statement – Mental, in which Dr. Raza opined that Plaintiff had was extremely limited in the ability to set realistic goals or make plans independently of others, and that she had marked limitations in nine areas of functioning. (Tr. 594-85). Plaintiff argues that the ALJ erred in giving Dr. Raza's opinion little weight, and that the ALJ should have given Dr. Raza's opinion more weight because he was a treating physician. (Doc. 13 at 11-13).

Indeed, the opinions of treating physicians are ordinarily given considerable weight, but the record does not reflect that Plaintiff was treated by Dr. Raza prior to his completing the Medical Source Statement – Mental. In fact, the only references in the record to Dr. Raza's involvement with Plaintiff's treatment are March 15 and June 13, 2013 Quarterly Treatment Plans which list Dr. Raza as participating in the review. (Tr. 540, 631). Notably, these Quarterly Treatment Plans are signed by other persons, and Dr. Raza's signature does not appear on

them. The Commissioner suggests that the failure of Dr. Raza to sign the Quarterly Treatment Plans indicates that he may not have actually been involved with the review. (Doc. 16 at 11). Even assuming that Dr. Raza participated in the Quarterly Treatment Plans, generally, a physician will be considered a treating source if the physician has seen the claimant "a number of times and long enough to have obtained a longitudinal picture of the claimant's impairment." 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i); Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) ("[The physician's] March letter . . . is not entitled to controlling weight as a medical opinion of a treating source. When she filled out the checklist, [the physician] had only met with [the claimant] on three prior occasions.") (citation omitted). As such, the court finds that substantial evidence supports the ALJ's determination to give little weight to Dr. Raza's opinion and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.

Additionally, the court notes that Dr. Raza's opinion indicating that Plaintiff had marked limitations in 9 out of 20 areas of functioning and extreme limitations in 1 of the 20 areas is inconsistent with Plaintiff's medical records as discussed above. Wright v. Colvin, 789 F.3d 847, 853 (8th Cir. 2015) (where a treating doctor's opinion "is not consistent with the objective medical evidence that relates to determining disabling pain levels," an ALJ need not give the treating doctor's opinion controlling weight). Also, Dr. Raza offered his opinion by merely making

checkmarks on a form. Checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011); Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) ("The checklist format, generality, and incompleteness of the assessments limit [the assessments] evidentiary value. . . . Indeed, [a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements.") (internal quotations and citations omitted).

In regard to the ALJ's RFC determination, Plaintiff argues that the ALJ should have considered her low GAF scores which were "routinely 45 to 50." (Doc. 13 at 13). As a preliminary matter, a GAF score "is not essential to the RFC's accuracy" and has no direct correlation to the severity requirements of the Listings for mental disorders. See Jones v. Astrue, 619 F.3d 963, 974-75 (8th Cir. 2010) ("[T]he Commissioner has declined to endorse the [GAF] score for 'use in the Social Security and [SSI] disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'") (quoting 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000) (other internal quotations and citations omitted); Howard v. Comm'r of Social Security, 276 F.3d 235, 241 (6th Cir. 2002). Thus, Plaintiff's low GAF scores did not establish she had severe impairments or that she was precluded from engaging

in substantial gainful activity.  See Earnheart v. Astrue, 484 F. App'x 73, 75 (8th Cir. 2012) (unpublished) (claimant's low GAF scores did not prevent ALJ from determining that she had the RFC to perform certain jobs).

Further, while GAF scores of 41 to 50 represent serious symptoms, scores of 51 to 60 represent moderate symptoms.  See n.3.  Thus, Plaintiff's scores of 50 were in the high end of the serious range and close to being in the moderate range. Further, although she had scores of 45 to 50, Plaintiff also had scores of 52.  (Tr. 527, 521).

To the extent Plaintiff suggests that the ALJ did not take her GAF scores into consideration, the ALJ's failure to discuss them does not mean he did not consider them.  See Montgomery v. Chater, 69 F.3d 273,275 (8th Cir. 1995).  See also Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) (while ALJ "was required to develop the record fully, she was not required to provide an in-depth analysis on each piece of evidence"); Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").  Moreover, the ALJ did address treatment notes which included Plaintiff's RFC scores.  As suggested by the Commissioner, it is, therefore, reasonable to conclude that the ALJ also considered Plaintiff's low GAF scores.  (Doc. 16 at 15).  In any case, any

deficiency in regard to the ALJ's consideration of Plaintiff's GAF scores does not affect the outcome of this matter. See Welch v. Colvin, 765 F.3d 926, 929 (8th Cir. 2014) (holding that the ALJ's failure to explicitly address applicable SSR 96-9p was an arguable deficiency in opinion writing that had no practical effect on decision because ALJ found Plaintiff's limitations had no more than a slight impact on claimant's ability to perform full range of sedentary work; therefore, the deficiency was not a sufficient reason to set aside the ALJ's decision); Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.").

In conclusion, upon determining Plaintiff's RFC, the court finds that the ALJ properly considered the evidence of record, including the opinions of examining and non-examining doctors and Plaintiff's treatment notes. Upon doing so the ALJ fulfilled his role to evaluate the record as a whole. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole). As such, the court finds that the ALJ's RFC determination is based on substantial evidence and is consistent with the Regulations and case law, and that Plaintiff's arguments to the contrary are without merit.

To the extent Plaintiff argues that the ALJ did not explain how she could perform unskilled work (Doc. 13 at 12), consistent with the Regulations and case law, after determining Plaintiff's RFC and after the VE testified regarding the nature of Plaintiff's past employment, the ALJ posed a hypothetical to a VE, which described a person of Plaintiff's age and with her RFC, work experience, and education.  (Tr. 48).  See Renstrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012); Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded.").

The VE responded that Plaintiff could perform the duties of a packager, an unskilled position performed at the medium exertional level.  (Tr. 47).  Based on the VE's testimony, and his independent consideration of the DOT, the ALJ found that, because Plaintiff could perform her past relevant work as a hand packager, Plaintiff was not disabled.  20 C.F.R. § 404.1560(b)(3) (if claimant has the RFC to perform her past relevant work, the Commissioner will find her not disabled).  As such, the court finds that the ALJ's determination that Plaintiff is not disabled is

based on substantial evidence and that Plaintiff's arguments to the contrary are without merit.

## V.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint, Brief in Support of Complaint, and Reply (Docs. 1, 13, 17) is **DENIED**;

**IT IS FURTHER ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.

Dated this 5th day of January, 2016.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE